SALLY G. KENDALL vs. DIRECTOR OF THE DIVISION OF
EMPLOYMENT SECURITY & another.[1,2]

Barnstable. November 5, 1984. — January 23, 1985.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Employment Security*, Exemption, Church-operated school.

Substantial evidence supported the determination by the reviewing board
   in the Division of Employment Security that an institution devoted to
   the care and training of the mentally handicapped under the auspices of
   a religious order of nuns was "operated primarily for religious purposes"
   within the meaning of the exemption from the employment security law
   provided in G. L. c. 151A, § 6 (r). [733-736]
An institution for the care and training of the mentally handicapped, which
   was operated by a corporation existing under G. L. c. 180 whose members
   were the administrators of a religious order of nuns, and which was
   subject to supervision and direction by the Roman Catholic Archbishop
   of Boston in accordance with canon law, was "controlled . . . by a
   church" within the meaning of the exemption from the employment
   security law provided in G. L. c. 151A, § 6 (r). [736-737]

CIVIL ACTION commenced in the First Barnstable Division
of the District Court Department on August 30, 1982.

The case was heard by *Roger B. Champagne*, J.

*Jerome J. Forman* (*John C. Weld* with him) for the claimant.

*Paul J. Molloy*, Assistant Attorney General, for Director of
the Division of Employment Security.

*Danielle E. deBenedictis* for the employer.

*Wilson D. Rogers, Jr.*, for Roman Catholic Archbishop of
Boston, amicus curiae, submitted a brief.

HENNESSEY, C.J. After being terminated from her employ-
ment as a mental health clinician at the Cardinal Cushing School

---

[1] Cardinal Cushing School and Training Center, Inc.

[2] We acknowledge the brief filed by the Roman Catholic Archbishop of
Boston as amicus curiae.

and Training Center, Inc. (Center), on July 31, 1981, Sally G. Kendall filed a claim for unemployment compensation pursuant to G. L. c. 151A. On October 29, 1981, a review examiner of the Division of Employment Security (division) denied her claim on the ground that the wages she earned while working for the Center were exempt from taxation under G. L. c. 151A, § 6 (*r*).[3] After a hearing before the division's board of review (board), the claimant was again denied benefits. On July 13, 1983, a District Court judge affirmed the decision of the board, and the claimant appealed to this court pursuant to G. L. c. 151A, § 42. We agree that the claimant is ineligible for benefits because her employment was exempt from the coverage of our employment security law by virtue of G. L. c. 151A, § 6 (*r*).

We summarize the board's findings of fact. The claimant worked for the Center for about six years before being terminated on July 31, 1981. She had no other employment during the required base period to establish eligibility for unemployment benefits. The Center, a special education facility for developmentally disabled children and young adults, was founded in 1947, and is owned and operated by the Sisters of St. Francis of Assisi. It is a nonprofit, charitable corporation, incorporated under G. L. c. 180 separately from the Roman Catholic Archbishop of Boston, who is a corporation sole. The purposes of the Center, as stated in the corporation's articles of organization, are "to promote the religious, spiritual, social and physical welfare of mentally retarded children, and in furtherance thereof, to establish and maintain a home and school for the care and training of such children."

---

[3] A more accurate description of the reason for denying the claimant benefits is that her employment was not included in the relevant statutory definition. General Laws c. 151A, § 6 (*r*), inserted by St. 1971, c. 940, § 8, states that the term "employment," for purposes of the employment security law shall not include: "Service performed in the employ of a church or convention or association of churches or an organization which is operated primarily for religious purposes and which is operated, supervised, controlled or principally supported by a church or convention or association of churches."

The Sisters of St. Francis of Assisi delegate responsibility for the operation of the Center to a board of directors composed of both religious and lay people. Under Catholic canon law the Center is under the jurisdiction of the Archbishop of Boston, as the ordinary of the Archdiocese of Boston, who has the authority to operate the Center if he chooses to do so. The Archbishop delegates an auxiliary bishop in the diocese to represent him on the Center's board of directors. The Center's primary source of financial support is tuition charged to the city, town, or State agency with responsibility for the student. There are also private sources of funding for the school. The Center is exempt from Federal taxes under I.R.C. § 501(c)(3) (1982), under a ruling issued to the National Catholic Welfare Conference, which includes the Center in its directory of organizations.

The programs of the Center are open to the developmentally disabled without regard to race, color, or religion. Religious classes and church services are available to students and are attended by those with parental permission for such instruction.

1. *Religious Purpose*

General Laws c. 151A, § (6) (*r*), and its Federal counterpart, I.R.C. § 3309(b)(1)(B) (1982), require that organizations separately incorporated from a church, like the Center, operate "primarily for religious purposes" and be "operated, supervised, controlled, or principally supported by a church" in order to qualify for exemption from unemployment compensation taxes. See *St. Martin Evangelical Lutheran Church* v. *South Dakota*, 451 U.S. 772, 782-783 (1981); *Ursuline Academy, Inc.* v. *Director of the Div. of Employment Sec.*, 383 Mass. 882 (1981). The board found that the Center satisfies these statutory requirements because its purpose, the rehabilitation of the mentally handicapped, is religiously motivated and the Center is subject to control by the Sisters of St. Francis of Assisi and, under canon law, by the Archbishop of Boston.

The claimant argues that the evidence does not support the board's finding that the Center "is operated primarily for religious purposes." Specifically the claimant points to these facts as proof of her contention: (1) the Center's articles of organi-

zation list the promotion of the religious welfare of mentally retarded children as only one among several corporate purposes; (2) the Center is open to developmentally disabled youth regardless of their religion; and (3) religious classes are not a required part of the school's curriculum. The claimant contends that in these respects the Center is unlike the Ursuline Academy, a separately incorporated religious school financed and supervised by the Roman Catholic Bishop of Springfield, and therefore is ineligible for the exemption granted to the latter employer. See *Ursuline Academy, Inc.* v. *Director of the Div. of Employment Sec., supra.*

The claimant asks us to set aside the board's findings and adopt a narrower definition of "religious purposes" than that applied by the board. Essentially, she contends that only if a school is devoted to religious instruction can it be said to operate "primarily for religious purposes." We decline to impose such rigid criteria in defining religious pursuits. We are mindful of the fact that courts have generally "been quite cautious in attempting to define, for tax [and unemployment insurance] purposes, what is or is not a 'religious' activity or organization — for obvious policy and constitutional reasons." *Community Renewal Soc.* v. *Department of Labor*, 108 Ill. App. 3d 773, 779 (1982), quoting B. Hopkins, The Law of Tax-Exempt Organizations § 8, at 132 (3d ed. 1979). Although tax exemptions are "normally . . . given a strict construction with all doubts construed against the taxpayer . . . the rule of strict construction is superseded in instances where there is a strong possibility that the statute in question infringes upon a party's right to the free exercise of religion." *Christian School Ass'n* v. *Commonwealth Dep't of Labor & Indus.*, 55 Pa. Commw. 555, 561 (1980).

One of the religious missions of the Center's founders, the Sisters of St. Francis of Assisi, is the educational care of mentally handicapped persons. The fact that the Center is open to handicapped children on a nondenominational basis is entirely consistent with the accomplishment of this stated purpose. Similarly, other corporate objectives listed in the Center's

articles of organization — promotion of the "spiritual, social and physical welfare of mentally retarded children" — do not detract from but are essential to the success of the order's mission.

To ensure that the Center is operated in accordance with church principles, the Sisters of St. Francis of Assisi appoint members of the board of directors, send a representative to all board meetings, and approve the corporate by-laws. Classes in religious education are available at the Center and Saturday mass is held for the school's resident students. A three-member on-site evaluation team representing the Sisters of St. Francis of Assisi has conducted a spiritual audit of the Center to ascertain that it is fulfilling the order's religious mission. See *Hollis Hills Jewish Center* v. *Commissioner of Labor*, 92 A.D.2d 1039, 1040 (N.Y. 1983) (characterization by employer that its operation was related to religious objectives, made in good faith, must be accepted by civil courts).

At oral argument the claimant conceded that the Center's operations are religiously motivated but argued that this motivation is distinct from the Center's secular purpose, the education of the mentally retarded. We do not see a clear distinction between such motive and purpose. The fact that the religious motives of the Sisters of St. Francis of Assisi also serve the public good by providing for the education and training of the mentally retarded is hardly reason to deny the Center a religious exemption.

In construing similar unemployment compensation statutes, courts elsewhere have found that institutions are "operated primarily for religious purposes" even where they also serve commercial purposes. *Department of Employment* v. *Champion Bake-N-Serve, Inc.*, 100 Idaho 53 (1979) (church-owned bakery). *Cox* v. *Employment Div.*, 47 Or. App. 641, 643 (1980) (Salvation Army Thrift Store). Clearly the same conclusion can be reached where the institution is devoted to the care of the mentally handicapped under the auspices of a religious order of nuns.

The law requires that the board's findings be upheld if they are supported by substantial evidence. G. L. c. 30A, § 14 (7).

See *Garfield* v. *Director of the Div. of Employment Sec.*, 377 Mass. 94, 96 (1979). Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1 (6), inserted by St. 1954, c. 681, § 1. Furthermore, in reviewing the board's findings we "give due weight to the experience, technical competence and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it." G. L. c. 30A, § 14. We conclude that substantial evidence exists on the record to warrant the board's finding that the Center is "operated primarily for religious purposes."

2. *Control*

The second requirement for exemption under G. L. c. 151A, § 6 (*r*), is that the employer be "operated, supervised, controlled or principally supported by a church." The board found that the Center is "controlled by a church"; the claimant contends the evidence does not support this determination. Contrary to the claimant's arguments, the fact that the Center is primarily financed by government funds is not decisive in determining the Center's eligibility for exemption. Principal support by a church is only one of four alternative statutory requirements. Similarly, the claimant's emphasis on the Center's separate incorporation does not negate the existence of church control. *Ursuline Academy, Inc.* v. *Director of the Div. of Employment Sec.*, 383 Mass. 882 (1981).

The Center is subject to church control through the authority exercised by the Sisters of St. Francis of Assisi and the Archbishop of Boston. According to the Center's by-laws, the corporate membership is limited to "canonically elected administrators of the Sisters of St. Francis of Assisi." Members of the corporation approve the appointment of directors, all amendments to the by-laws and articles of incorporation, and all major decisions affecting the purposes and operation of the Center. Appointment of the superintendent, the board's direct executive representative in the management of the school, is subject to the approval of the members. In addition, if the corporation is dissolved, an action requiring a two-thirds vote by the membership, the assets revert to the Sisters of St. Francis of Assisi.

As a religious institute in the Archdiocese of Boston, the Center is subject to supervision and direction by the Archbishop of Boston in accordance with the code of canon law. The fact that the Center is separately incorporated does not affect the responsibilities and rights granted to the Archbishop. As noted above, an auxiliary bishop of Boston sits on its board of directors as his representative. In light of these facts, we affirm the judgment of the District Court affirming the board's decision.

*So ordered.*