[¶ 79] I would vacate the judgment of the Superior Court.

2006 ME 41

**Ann T. SCHWARTZ**

v.

**UNEMPLOYMENT INSURANCE COMMISSION et al.**

Supreme Judicial Court of Maine.

Argued: March 25, 2005.
Decided: April 26, 2006.

Arthur J. Greif (orally), Julie D. Farr., Gilbert & Greif, P.A., Bangor, for plaintiff.

G. Steven Rowe, Atty. Gen., Elizabeth J. Wyman, Asst. Atty. Gen. (orally), Pamela W. Waite, Asst. Atty. Gen., Augusta, for defendants.

Kevin M. Cuddy (orally), Cuddy & Lanham, Bangor, for Maine Sea Coast Missionary Society, defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, and LEVY, JJ.*

Majority: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, and LEVY, JJ.

Dissent: DANA, and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] Ann T. Schwartz appeals from a judgment of the Superior Court (Hancock County, *Mead, J.*) affirming the decision of the Unemployment Insurance Commission in which the Commission concluded that Schwartz is not entitled to receive unemployment benefits because her former employer, the Maine Sea Coast Missionary Society (the Mission), is exempt from unemployment taxation pursuant to 26 M.R.S. § 1043(11)(F)(21)(a) (2005). Schwartz contends that she should be entitled to benefits because (1) the Mission is not operated primarily for religious purposes, and (2) the Mission is not principally supported by an association of churches. Although the Commission did not err in concluding that the Mission is operated for religious purposes, because the findings of the Commission that the Mission is principally supported by an association of churches are not sufficiently clear, we vacate the judgment of the Superior Court and remand for the Commission to clarify its decision.

## I. BACKGROUND

[¶ 2] The Mission is a nonprofit organization serving coastal communities. Eight of its staff members are ordained members of the clergy who serve as pastors for island congregations. Gary DeLong, an ordained minister, serves as the executive director of the Mission. He describes the Mission's programs as being "at the very heart of the essence of the religious enterprise." DeLong, as well as many of the Mission's employees, view their work as a form of ministry and as doing the work of the church.

[¶ 3] The Mission provides programs to coastal communities to demonstrate "God's love and compassion to marginalized people in the area [it] serve[s]." The Mission was founded as an inclusive Christian ministry, and, over the years, it has never downplayed its Christian roots. More than fifty percent of its income comes from individual donors, who contribute to the organization because of its Christian nature. The Mission also receives contributions of money and services from ninety-six churches. It is affiliated with both the United Church of Christ and the American Baptist Congregation. The Mission's employees are eligible for United Church of Christ benefits, including its pension, healthcare, and retirement plans, except that its Baptist clergy are instead eligible for American Baptist Congregation benefits.

[¶ 4] The Mission provides various religious and secular services to the coastal communities. One featured program is the telemedicine program, which uses a boat named the "Sunbeam" to bring a nurse to the islands to care for those who cannot afford other health services. The Sunbeam also transports ministers to the islands to lead religious services and to provide counseling. Additionally, the Mission sponsors an after-school program in Washington County. The program does not teach religious doctrine directly, but it

* Justice Paul L. Rudman participated in the initial conference, but retired before this opinion was certified.

does emphasize character building, leadership, and academic achievement. The Mission also runs a used clothing shop and food pantry, as well as a church revitalization program.

[¶ 5] In May of 2000, the Mission hired Schwartz to serve as its director of development. In December of 2002, the Mission terminated Schwartz's employment, following which Schwartz sought unemployment benefits from the State.[1] Schwartz's application was initially approved by a Commission field supervisor. The Mission appealed from this decision, and the Tax Section manager overturned the field supervisor's determination and found Schwartz to be ineligible for unemployment benefits.[2]

[¶ 6] Schwartz appealed the decision of the Tax Section manager to the Division of Administrative Hearings. A Division hearing officer issued a decision finding that Schwartz was not eligible for unemployment benefits based on her insufficient wages. Schwartz then appealed to the Commission. *See* 26 M.R.S. § 1194 (2005). Following a hearing, the Commission denied benefits to Schwartz based on its finding, pursuant to section 1043(11)(F)(21)(a), that the Mission is: (1) a church organization; (2) operated primarily for religious purposes, because, al-

though not all of its programs involve religious teachings, they are for religious purposes and are part of the Mission's religious activities and religious programs; and (3) principally supported by an association of churches.

[¶ 7] Schwartz petitioned for review of the Commission's decision in the Superior Court pursuant to M.R. Civ. P. 80C. The court affirmed the Commission's findings that the Mission is both operated for religious purposes and principally supported by an association of churches. The court concluded, however, that the Commission erred as a matter of law in finding that the Mission is a church organization exempt from employer contributions pursuant to the first prong of 26 M.R.S. § 1043(11)(F)(21)(a).[3] Schwartz appealed to this Court.

## II. DISCUSSION

[¶ 8] When an appeal is taken from a decision of the Superior Court, acting as an intermediate appellate court, we review a final Unemployment Insurance Commission decision "directly to determine whether there exists any competent evidence to support the agency findings and then ascertain whether upon those findings the applicable law has been correctly applied." *Lewiston Daily*

---

1. In 2001, the Mission published a personnel handbook that incorrectly stated that unemployment insurance was provided to employees. That provision has since been deleted from the handbook.

2. In order to be eligible to receive unemployment benefits, a claimant must have earned wages for insured work, which is defined as "employment by employers." 26 M.R.S. §§ 1043(15), 1192(5) (2005). Pursuant to section 1043, however, "employment" does not include:

   (21) Service performed in the employ of any organization which is excluded from the term "employment" as defined in the

Federal Unemployment Tax Act solely by reason of section 3306(c)(7) or (8) if:

   (a) Service performed in the employ of a church or convention or association of churches, or an organization which is operated primarily for religious purposes and which is operated, supervised, controlled or principally supported by a church or convention or association of churches . . . .

26 M.R.S. § 1043(11)(F)(21)(a) (2005).

3. The Mission does not challenge the Superior Court's conclusion that the Mission is not a church within the meaning of 26 M.R.S. § 1043(11)(F)(21)(a), and we do not address it.

*Sun v. Unemployment Ins. Comm'n,* 1999 ME 90, ¶ 7, 733 A.2d 344, 346 (quotation marks omitted). We will not overrule findings of fact supported by competent evidence, and where the appellant is the party with the burden of proof before the Commission, we will not disturb a decision of the Commission on issues of fact, unless the record before the Commission compels a contrary result. *Id.*

[¶ 9] The Commission's findings of fact will be upheld unless they are clearly erroneous. *Gulick v. Bd. of Envtl. Prot.,* 452 A.2d 1202, 1207–08 (Me.1982). Moreover, "we defer to an agency in those areas within its expertise unless a statute or regulation compels a contrary result." *Green v. Comm'r of the Dep't of Mental Health, Mental Retardation & Substance Abuse Servs.,* 2001 ME 86, ¶ 9, 776 A.2d 612, 615; *see also Imagineering, Inc. v. Superintendent of Ins.,* 593 A.2d 1050, 1053 (Me.1991) ("On questions involving the interpretation and application of technical statutes or regulations, this court gives deference to the administrative agency unless the statutes or regulations plainly compel a contrary result.").

[¶ 10] Findings required by statute must be stated with sufficient specificity to permit understanding and meaningful appellate review. 5 M.R.S. § 9061 (2005); 1 M.R.S. § 407(1) (2005); *Hannum v. Bd. of Envtl. Prot.,* 2003 ME 123, ¶ 12, 832 A.2d 765, 769. Findings may be insufficient if they merely state a conclusion using the terms of the relevant statute. *See Bayley v. Bayley,* 602 A.2d 1152, 1154 (Me.1992); *In re Amber B.,* 597 A.2d 937, 938 (Me. 1991).

### A. Operated Primarily for Religious Purposes

[¶ 11] Schwartz contends that the Commission erred in finding that the Mission is operated primarily for religious purposes within the meaning of 26 M.R.S. § 1043(11)(F)(21)(a). We disagree. There is substantial evidence in the record to support the finding that the Mission's purposes are primarily religious, including: (1) the Sunbeam, a boat prominently featuring a cross on its hull, brings pastors to island communities to lead religious services and to provide religious counseling; (2) the Mission pays ministers' salaries in conjunction with coastal and island churches; (3) the Mission offers a Christmas program; (4) the executive director of the Mission is an ordained minister whose ministry is an authorized ministry of the Maine Conference of the United Church of Christ; and (5) eight of the Mission staff members are clergy who have come from the Baptist and Congregational tradition.

[¶ 12] The fact that an organization has a charitable purpose and does charitable work does not require the conclusion that its purposes are not primarily religious pursuant to section 1043. *Cf. Salvation Army v. Town of Standish,* 1998 ME 75, ¶ 5, 709 A.2d 727, 729 (holding that a charitable organization's religious purposes will not remove it from the purview of a property tax exemption); *see also Kendall v. Dir. of the Div. of Employment Sec.,* 393 Mass. 731, 473 N.E.2d 196, 199 (1985) (holding that a center for mentally retarded children established by the Sisters of St. Francis of Assisi was exempt from unemployment taxation, and emphasizing that allowing children of any religious belief to enroll in the program was consistent with its purpose to promote the spiritual, social, and physical welfare of mentally retarded children).

[¶ 13] The Mission was originally established to help build congregations on the islands, to bring pastors to the islands, and to provide services to the island communities. Even as the Mission has adopted new ways to meet the needs of the commu-

nities it serves, it has maintained its religious emphasis and function. The fact that the Mission provides health care to islanders and an after-school program for students does not diminish its continuing religious purpose. The Commission's finding that the Mission is operated primarily for religious purposes is not clearly erroneous.

## B. Principally Supported by an Association of Churches

[¶ 14] Schwartz also contends that the Commission's finding, pursuant to section 1043(11)(F)(21)(a), that the Mission is principally supported by an association of churches is erroneous for two reasons. First, Schwartz argues that the only criteria that should be used to determine and measure the term "supported" within the meaning of the statute is financial. She contends that the direct financial support the Mission receives from churches, totaling only $26,000 of the Mission's $1.7 million annual budget, is insufficient to justify the Commission's finding that the Mission is principally supported by an association of churches.

■■■ [¶ 15] The language of section 1043(11)(F)(21)(a) leads to a conclusion that financial support is not the only kind of support that may be considered in determining whether an organization is "principally supported by a church or convention or association of churches" pursuant to section 1043. "The cardinal rule of statutory construction is that when the words of the Legislature are clear, they are to be given their plain meaning and further judicial interpretation is not necessary." *Bureau of Employee Relations v. Me. Labor Relations Bd.*, 611 A.2d 59, 61 (Me.1992). The language of the statute does not restrict the meaning of "principal-ly supported" to direct financial support, and the Commission did not err when it construed "support" to include more than just financial support. Support may also include contributed goods and services, and organizational backing and support. Thus, the Commission's interpretation of section 1043 is not contrary to its plain language and is not erroneous.

■■■ [¶ 16] Schwartz also challenges the Commission's factual finding that the Mission is "principally supported" by an "association of churches," and argues that there is insufficient evidence in the record that the ninety-six churches that do provide financial support to the Mission constitute an "association of churches" within the meaning of the statute. Schwartz also contends that even if support is not limited to financial support, the evidence of support is insufficient. We disagree. The churches providing support can be said to be an association of churches, and because support within the meaning of section 1043(11)(F)(21)(a) is not limited to financial support, we cannot conclude as a matter of law that the evidence in the record is insufficient to justify a finding that the Mission is principally supported by an association of churches.

■■■ [¶ 17] Nevertheless, the Commission's finding on the "principally supported" issue is flawed because it is in reality a restatement in conclusory form of the terms of the governing statute. Following this conclusory statement, the Commission's decision cited some of the evidence in the record which indicated that more than fifty percent of the Mission's income is derived from endowments given mostly by individuals motivated by the fact that it is a Christian organization,[4] that

---

4. The Commission's findings do not indicate the extent to which the Commission considered the individual endowments to have re-sulted from efforts of churches in encouraging or exhorting numbers to contribute to the Mission.

Baptist and Congregational churches provide financial support to the Mission, that ninety-six churches donated money or services to the Mission, and that those financial contributions totaled about $26,000. Aside from these financial contributions, the Commission's findings make no mention of the services on which the Commission relies in concluding that the Mission is principally supported by an association of churches. Moreover, there was no mention of "services or in-kind services" provided, including the loaning of personnel, and the services flowing from the Mission's affiliation with churches, such as the use of a pension program, as well as the value of participation in church meetings and conventions, and the churches' encouragement of donations from their own parishioners. On remand, the Commission should therefore articulate the extent to which the provision of such services to the Mission was a factor in its conclusion that the Mission is principally supported by an "association of churches."

[¶ 18] Accordingly, we vacate the judgment of the Superior Court and remand to the Superior Court with instructions to remand to the Commission in order for the Commission to clarify its decision, and determine anew whether the Mission is "principally supported by ... [an] association of churches" pursuant to 26 M.R.S. § 1043(11)(F)(21)(a).

The entry is:

Judgment vacated. Remanded to the Superior Court with instructions to remand to the Unemployment Insurance Commission for further proceedings consistent with this opinion.

DANA, J., with whom CALKINS, J., joins, dissenting.

[¶ 19] Although I agree we must vacate, because the record does not and could not support a finding that the Mission is "principally supported by ... [an] association of churches," I would remand and direct a judgment for the plaintiff. First, there is no evidence that the ninety-six churches are an association (unless every time multiple churches give money to an entity they become an "association") and, there is undisputed evidence that the Mission is principally supported by funds currently contributed by individuals and by income from funds previously contributed by individuals (endowments). Second, there is no evidence in the record from which the Commission, on remand, could value the "goods and services" provided by the ninety-six churches or by the two national entities (again assuming that the churches and the entities form an "association"). Finally, there is no evidence from which the Commission could possibly divine the extent to which advocacy by the ninety-six preachers in the ninety-six churches motivated the donors of the current gifts and the endowment funds. For all these reasons, I would not invite the Commission to do the impossible, and would remand with instructions to award the plaintiff her unemployment benefits.