STATE OF MAINE                                          SUPERIOR COURT
CUMBERLAND, ss                                          CIVIL ACTION
                                                        DOCKET NO. AP-08-028

CHRISTOPHER JORDAN,          2009 MAY -1  P 1: 58       REC            5/1/2009
                Petitioner
v.                                                      ORDER ON
                                                       80C APPEAL
MAINE UNEMPLOYMENT
INSURANCE COMMISSION,
                Respondent

Before the Court is Petitioner Christopher Jordan's appeal from a decision by the

Respondent Maine Unemployment Insurance Commission.

## PROCEDURAL HISTORY

Petitioner Christopher Jordan (hereinafter "Petitioner" or "Jordan") applied for

unemployment benefits after his employer, Hamilton's Service Station, terminated him

on March 19, 2008. A Deputy of the Maine Department of Labor Bureau of

Unemployment Compensation determined that Jordan was disqualified from receiving

benefits because he was discharged for misconduct, as is defined in the Employment

Security Law, 26 M.R.S. § 1043(23) (2008). Jordan appealed to the Division of

Administrative Hearings. After a hearing, the Administrative Hearing Officer affirmed

the decision of the deputy. Shortly thereafter, Jordan appealed this decision to the

Maine Unemployment Insurance Commission ("Commission"). The Commission

affirmed and adopted the decision of the Administrative Hearing Officer. Jordan

requested reconsideration of the decision, but the Commission denied this request. This

appeal followed.[1]

---

[1] On January 7, 2009, the Court dismissed this action for want of prosecution. However, on January 14, 2008, the Court treated a letter by the Petitioner as a motion to reconsider. On January 23, 2009, the Court granted that motion, thereby allowing the case to now be decided on the merits.

## FACTUAL BACKGROUND

The employer, Hamilton's Service Station, employed Jordan as general help from September 2007 until his discharge on March 19, 2008. He was required to report to work at 8:00 a.m. During the course of his employment, and more so during the winter months, Jordan was late to work by 5 to 20 minutes. In fact, the owner of Hamilton's Service Station, Christopher Hamilton, testified[2] that Jordan was late 20 times during an 11-week period.[3] Mr. Hamilton gave Jordan one oral warning about his tardiness.[4] On February 15, 2008, Mr. Hamilton also gave Jordan a written warning, which made clear that if he continued to be tardy for work the employer would "have no choice" but to terminate his employment. Jordan signed this warning.

At the administrative hearing, Jordan admitted that he was late to work on numerous occasions. In his testimony he blamed his tardiness on the weather, traffic, car troubles, and the bus schedule. Jordan lived about two and a half miles from the workplace but he only walked to work once.

Jordan's tardiness caused two problems for Hamilton's Service Station. First, the employer needed him there at 8:00 a.m. because it was one of the employer's busiest times of the day. In his absence, other employees would have to perform Jordan's

---

[2] Respondent states that "[t]he employer noted 11 times during a 20 week period in which [Jordan] was late." Resp.'s Br. at 2; *see also* Resp.'s Br. at 6-7. However, the testimony of Mr. Hamilton states that "I've got the last 11 weeks of timecards, and on there, there was 20 times that he was late." R. at 28.

[3] Jordan mistakenly argues it was in error for the Administrative Hearing Officer not to seek the admission of the timecards into evidence. Pet.'s Br. at 3 ("It is my understanding that physical evidence is necessary for court cases."). Under the Maine Administrative Procedure Act, 5 M.R.S. §§ 8001-11008 (2008) the rules of evidence do not apply. 5 M.R.S. § 9057(1). Nevertheless, an administrative body may only admit evidence "if it is the kind of evidence upon which reasonable persons are accustomed to rely in the conduct of serious affairs." *Id.* § 9057(2). In this case, it stands to reason that reasonable people could rely solely on a business owner's testimony for the facts and circumstances regarding an employee's tardiness. Thus, it was not imperative for Mr. Hamilton to offer the timesheets themselves into evidence.

[4] At the administrative hearing Mr. Hamilton offered a handwritten statement purportedly written by the service station manager, Justin Dyer. R. at 54. This statement, however, is not dated, sworn to, or authenticated in any other way. Thus, it does not meet the minimum standard of reliability for agency hearings as described in 5 M.R.S. § 9057(2). *See Heal v. Me. Employment Sec. Comm'n*, 447 A.2d 1223, 1226 (1982) (holding that two "documents on their face [did] not supply any assurance of reliability."). Although this statement was admitted at the administrative hearing it should not have been, but it is not necessary to the support the findings and conclusions.

duties until he arrived. Second, Hamilton's Service Station employed three other employees and the owner did not believe it was fair to the other employees to allow Jordan to be tardy without consequences. Mr. Hamilton testified that such behavior damaged morale in the workplace.

## DISCUSSION

### I. Standard of Review

When the Superior Court reviews a final decision of the Unemployment Insurance Commission pursuant to M.R. Civ. P. 80C it reviews the decision to determine "whether there exists any competent evidence to support the agency findings and then ascertain whether upon those findings the applicable law has been correctly applied." *Schwartz v. Me. Unemployment Ins. Comm'n*, 2006 ME 41, ¶ 8, 895 A.2d 965, 969. The Court "will not overrule findings of fact supported by competent evidence, and where the [petitioner] is the party with the burden of proof before the Commission, we will not disturb a decision of the Commission on issues of fact, unless the record before the Commission compels a contrary result." *Id.* The Commission's findings of fact may be reversed on appeal if the Court finds that they are unsupported by substantial evidence on the whole record. 5 M.R.S. § 11007(4)(C)(5) (2008).

### II. Misconduct

Under the Employment Security Law, an unemployed individual may receive unemployment compensation provided that the individual meets certain eligibility requirements. 26 M.R.S. § 1192(1)-(12) (2008). However, an individual is disqualified for benefits if he is "discharged for misconduct connected with his work." *Id.* § 1193(2). The statute defines "misconduct" as:

> a culpable breach of the employee's duties or obligations to the employer or a pattern of irresponsible behavior, which in either case manifests a disregard for a material interest of the employer. This definition relates only to an employee's

3

entitlement to benefits and does not preclude an employer from discharging an employee for actions that are not included in this definition of misconduct. A finding that an employee has not engaged in misconduct for purposes of this chapter may not be used as evidence that the employer lacked justification for discharge.

> A. The following acts or omissions are presumed to manifest a disregard for a material interest of the employer. If a culpable breach or a pattern of irresponsible behavior is shown, these actions or omissions constitute "misconduct" as defined in this subsection. This does not preclude other acts or omissions from being considered to manifest a disregard for a material interest of the employer. The acts or omissions included in the presumption are the following:

. . .

> 4) Failure to exercise due care for punctuality or attendance after warnings;

*Id.* § 1043(23)(A)(4). Under section 1043, there must be "a culpable breach of the employee's duties or obligations to the employer or a pattern of irresponsible behavior." *Id.* § 1043(23). To establish this, an employer can either rely on the presumption that arises when an employee was terminated for misconduct, or the employer may rely on other acts or omissions that may "manifest a disregard for a material interest of the employer." *See id.*

The Court must make a "determination not only that the employer has a reasonable standard for discharge, but also that the employee acted unreasonably in failing to meet that standard." *Wellby Super Drug Stores, Inc. v. Me. Unemployment Ins. Comm'n*, 603 A.2d 476, 478 (Me. 1992) (quoting *Thompson v. Me. Unemployment Ins. Comm'n*, 490 A.2d 219, 222 (Me. 1985); *Moore v. Dep't of Manpower Affairs*, 388 A.2d 516, 519 (Me. 1978)). "For purposes of this analysis reasonableness is an objective standard based on the circumstances of the case." *Wellby Super Drug Stores*, 603 A.2d at 478. Additionally, the section 1043 standard "specifically includes within the definition of misconduct careless or negligent acts of such degree that they are equivalent to

4

intentional or deliberate violations of an employer's standards." *Forbes-Lilley v. Me. Unemployment Ins. Comm'n,* 643 A.2d 377, 379 (Me. 1994).

### A.    Reasonable Standard

The first issue is whether the employer's standard for timeliness was a reasonable standard for the company. The employer expected Jordan to arrive for work at 8:00 a.m. It is undisputed that this expectation was communicated to Jordan. It is difficult to envision a scenario where an employer's requirement for employees to report to work on time could be viewed as unreasonable. In this case, the owner proffered two legitimate reasons for why employee timeliness was important: first, the business was particularly hectic at 8:00 a.m.; second, an employee's non-compliance with company policies, without consequences, lowered the morale of other employees. The owner clearly communicated this standard to Jordan on at least two occasions, once orally and once in writing. At the time that Mr. Hamilton terminated Jordan he had been late to work, on average, nearly two times per pay period.

For these reasons, the Court finds that there is competent evidence in the record to support the Commission's conclusion, in affirming and adopting the decision of the Administrative Hearing Officer, finding that the employer had a reasonable standard for discharge. Thus, the first-prong of the two-prong test for misconduct is satisfied.

### B.    Objectively Unreasonable Actions of the Employee

The next prong of the analysis requires the Court to determine whether the Commission had before it competent evidence for the conclusion that Jordan "acted unreasonably in failing to meet" the employer's timeliness standard. *See Wellby Super Drug Stores,* 603 A.2d at 478. As stated above, the employer produced undisputed evidence that Jordan was repeatedly late for work. The employer warned Jordan orally that this jeopardized his continued employment. Subsequently, the employer issued a

written warning to Jordan, which unequivocally stated that his continued tardiness would result in his termination. Approximately one month after the written warning, Jordan was late two more times.[5] After the second time, Mr. Hamilton terminated Jordan due to his tardiness.

Jordan's actions demonstrate, objectively, that he unreasonably failed to meet his employer's standard for arriving to work on time. In the first instance after the written warning, Jordan blamed his tardiness on the fact that his car was being serviced at Hamilton's Service Station. This reason does not provide an adequate excuse for Jordan's tardiness, especially in light of the unequivocal warning he received previously. Jordan, living approximately two and a half miles from work, had several other ways of getting to work. His failure to ensure his timely arrival, despite the fact that his vehicle was at the employer's service station, demonstrates his disregard for his employer's reasonable expectations. This point is further elucidated by Jordan's testimony regarding his tardiness on his day of discharge:

> **Mr. Jordan:** My tardiness the day before dismissal was also due to riding the bus, and the day that I was dismissed, I was there within three to four minutes of 8:00 and *outside on my phone.*
>
> **Hearing Officer Smith:** Are you saying you were only three to four minutes late?
>
> **Mr. Jordan:** Yes, the last day that I was there.

R. at 37 (emphasis added).

Jordan's actions of arriving to work late and then compounding his tardiness by lollygagging outside on his phone provides competent evidence for the Commission's decision, in affirming and adopting the decision of the Administrative Hearing Officer,

---

[5] March 18, 2008 and March 19, 2008 (the date of dismissal).

that Jordan "acted unreasonably in failing to meet" the employer's timeliness standard. Hence, the court finds that the second-prong of the misconduct test is satisfied.

The Commission correctly applied section 1043 of the Employment Security Law to the facts that the Court finds are supported by competent evidence.

Therefore, the entry is:

The decision of the Maine Unemployment Insurance Commission is AFFIRMED.

The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated at Portland, Maine this ___/ ST___ day of ___ May ___, 2009.

Robert E. Crowley
Justice, Superior Court

7

Date Filed ___8-15-08___ CUMBERLAND _____ Docket No. ___AP08-28___

County

Action __80C Appeal_____

CHRISTOPHER JORDAN                    UNEMPLOYMENT INSURANCE COMMISSION

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| PRO SE<br>37 MERRILL STREET APT. #1<br>PORTLAND ME 04101 | ELIZABETH WYMAN AAG<br>DEPARTMENT OF THE ATTORNEY GENERAL<br>6 STATE HOUSE STATION<br>AUGUSTA ME 04333-0006 |

Date of
Entry