MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2014 ME 156
Docket:        BCD-14-35
Submitted
  On Briefs:  October 27, 2014
Decided:      December 31, 2014

Panel:         SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, JABAR, and HJELM,
               JJ.
Majority:      SAUFLEY, C.J., and MEAD, GORMAN, and HJELM, JJ.
Concurrence: SAUFLEY, C.J.
Dissent:       SILVER and JABAR, JJ.
Dissent:       ALEXANDER, J.

PETER BECKFORD et al.

v.

TOWN OF CLIFTON et al.

HJELM, J.

[¶1]  Pisgah Mountain, LLC, appeals from a judgment of the Business and Consumer Docket (Portland, *Horton, J.*) vacating a decision of the Town of Clifton Planning Board that granted Pisgah a permit to construct and operate a wind energy project.  After the Town's Zoning Board of Appeals (ZBA) affirmed the Planning Board's decision, the matter was appealed to the Superior Court by Peter and Julie Beckford, who own land adjacent to the proposed development site. Because the Beckfords did not file their appeal with the Superior Court within the time required by M.R. Civ. P. 80B(b) and 30-A M.R.S. § 2691 (2014), the court did not have jurisdiction over the matter.  Consequently, we vacate the judgment.

## I. BACKGROUND

[¶2]  In late 2010, Pisgah applied to the Town of Clifton Planning Board for site plan approval to build and operate a five-turbine commercial wind energy project.  The Planning Board held a series of public meetings and workshops about the application throughout the spring and summer of 2011.  At several of the public meetings, the Beckfords voiced their opposition to the project, contending that Pisgah had not met the requirements of the Town of Clifton Land Use Ordinance.

[¶3]  In October 2011, the Planning Board voted to approve Pisgah's application and issued specific findings regarding the project's compliance with all applicable provisions of the Ordinance.  The Beckfords timely appealed the Planning Board decision to the ZBA, and, after conducting a public hearing on the appeal, the ZBA remanded the matter to the Planning Board for further findings of fact.  On January 25, 2012, following remand, the ZBA held another hearing on the application, where it considered the Beckfords' arguments and the Planning Board's further findings.  At that hearing, the ZBA voted to adopt the Planning Board's findings of fact and to reject each of the specific challenges that the Beckfords raised on appeal to the ZBA.  The ZBA then voted separately to deny the appeal "in its entirety."  Following these votes, the ZBA decided that it would meet again on January 30 "for the Final Decision."

[¶4]  When it reconvened on January 30, 2012, the ZBA approved the minutes of the January 25 meeting, which memorialized the votes noted above. The ZBA also voted "to accept the presented copy, as written, of the Notice of Final Decision made by the Appeals Board on the appeal from Julie and Peter Beckford."  The ZBA's members each signed the written decision and findings of fact, which concluded, "the Board denies their appeal."

[¶5]  On March 15, 2012, the Beckfords filed a complaint pursuant to M.R. Civ. P. 80B in Superior Court (Penobscot County).[1]  Pisgah and the Town moved to dismiss the Beckfords' complaint on the ground that it was filed outside of the forty-five-day appeal period established in 30-A M.R.S. § 2691(3)(G) (2014).  The court (*Anderson, J.*) denied the motion to dismiss, concluding that the statutory appeal period started on January 30 when the ZBA issued its written findings and decision, not on January 25 when it voted to deny the appeal.

[¶6]  In May 2013, the court (*Horton, J.*) issued a decision remanding the case to the Planning Board for further findings of fact but retaining jurisdiction. After considering the additional findings of the Planning Board, the court entered a judgment on December 11, 2013, vacating the Board's decision to approve the permit on the ground that the Town misapplied the requirements of the Land Use

---

[1]  The case was later transferred to the Business and Consumer Docket. *See* M.R. Civ. P. 131.

4

Ordinance. The Town and Pisgah timely filed an appeal of that decision pursuant to M.R. Civ. P. 80B(n) and M.R. App. P. 2, and the Beckfords cross-appealed.

## II. DISCUSSION

[¶7] In addition to its arguments on the merits, Pisgah contends that the Superior Court lacked jurisdiction over the Beckfords' appeal. Pisgah argues that the Beckfords' Rule 80B appeal was untimely because the appeal period began with the ZBA's January 25 vote. The Beckfords contend that the ZBA's operative vote was on January 30 when it issued its written findings and that therefore their appeal was timely.

[¶8] The procedural mechanism governing the Beckfords' appeal from the ZBA's decision is M.R. Civ. P. 80B, which provides that "[t]he time within which review may be sought shall be as provided by statute . . . ." M.R. Civ. P. 80B(b).[2] The applicable statute in this case is 30-A M.R.S. § 2691, which governs municipal boards of appeals.[3] That statute provides: "Any party may take an appeal within

---

[2] Rule 80B(b) was subsequently amended to identify in greater detail the event that triggers the appeal period. *See* Amendments to the Maine Rules of Civil Procedure, 2014 Me. Rules 05 (effective September 1, 2014). The amended rule is inapplicable here, first, because the Beckfords filed their appeal to the Superior Court prior to the effective date of the amendment, and, second, because rule 80B(b) continues to provide that the time to file an appeal is "as provided by statute," which here is 30-A M.R.S. § 2691 (2014).

[3] The Town of Clifton Land Use Ordinance also contains a provision regarding appeals, which states that appeals may be made to the Superior Court "in accordance with state laws," specifically section 2691. Clifton, Me. Land Use Ordinance, art. 17, § 7 (2010).

45 days of the date of the vote on the original decision . . . ." 30-A M.R.S. § 2691(3)(G). The Beckfords filed their appeal forty-five days after the ZBA issued its written findings and decision on January 30, but fifty days after the ZBA voted to deny the appeal. Thus, the timeliness of the appeal hinges on whether the ZBA's "vote on the original decision" occurred on January 25 or January 30.[4] If the appeal to the Superior Court was filed after the statutory deadline, then the court did not have jurisdiction to consider its merits. *See Davric Maine Corp. v. Bangor Historic Track, Inc.*, 2000 ME 102, ¶ 11, 751 A.2d 1024 (stating that "[s]tatutory limitations on appeal periods are jurisdictional").

[¶9] In order to determine whether the Superior Court had jurisdiction over the Beckfords' appeal, we must answer two fundamental questions. First, does a vote by a board of appeals only trigger the appeal period for purposes of section 2691 once a written decision with findings of fact is issued? Second, regardless of when the written decision was issued, did the operative "vote" in this case occur on January 25 or on January 30? To answer these questions, we must construe section 2691, which we do de novo. *See Carrier v. Secretary of State*, 2012 ME 142, ¶ 12,

---

[4] Because the legislative history of section 2691 suggests that "original decision" refers to a board of appeals' vote on an appeal as opposed to a later vote on a motion for reconsideration, *see* L.D. 1198 (115th Legis. 1991), we do not attach significance to the word "original" in determining whether the appeal period was triggered by the January 25 vote or the January 30 vote. Rather, for separate reasons set forth *infra*, we conclude that the appeal period began on January 25.

6

60 A.3d 1241. "We first look to the plain meaning of the statute," and "look to legislative history and other extraneous aids in interpretation of the statute only if it is ambiguous." *Id.* (quotation marks omitted).

## A.

[¶10] We first consider whether, after voting on an appeal, a board of appeals also must issue written findings in order to trigger the appeal period pursuant to section 2691.

[¶11] The language of section 2691 is clear and unambiguous: the time period for filing an appeal runs from "the vote." A vote is "the expression of one's preference or opinion in a meeting or election by ballot, show of hands, or other type of communication." *Black's Law Dictionary* 1711 (9th ed. 2009); *see also United States v. Cole*, 41 F.3d 303, 308 (7th Cir. 1994). Section 2691 does not include any language that directly or indirectly suggests that to be sufficient to invoke the appeal period, a vote must be accompanied by issuance of a written decision.

[¶12] In *Carroll v. Town of Rockport*, we held that, pursuant to section 2691, "The date of the vote on the original decision necessarily means the vote finally approving or disapproving an appeal or an application . . . ." 2003 ME 135, ¶ 23, 837 A.2d 148 (quotation marks omitted). Accordingly, the appeal period in *Carroll* did not begin when written findings of fact were issued several days after

the final vote on plan approval, but when the board of appeals voted on the permit application. *See id.* ¶ 22. This demonstrates that the issuance of written findings is an event that is distinct from the vote itself. *See id.* ¶ 23; *see also Vachon v. Town of Kennebunk*, 499 A.2d 140, 142 (Me. 1985).

[¶13] This principle holds true even where a municipal ordinance requires a zoning board of appeals to issue a written decision, as it does here. *See* Clifton, Me. Land Use Ordinance, art. 17, § 6(E)(6) (2012). For example, in *Vachon*, a statute required the zoning board of appeals to issue a written statement of findings and conclusions and to send notice of the decision to the petitioner. 499 A.2d at 142. The statute at issue was an earlier version of section 2691, which provided that the time for an appeal begins when "the decision is rendered," instead of upon "the vote on the original decision," as the statute now provides. *See* 30 M.R.S.A. § 2411(3)(F) (1978). We held that "the decision [was] rendered" when the board of appeals voted at a public meeting to deny the petitioner's permit application, not when written notice of the decision was later sent to the petitioner, even though the board of appeals was required to issue the written decision. *Id.*

[¶14] Similarly, in *Woodward v. Town of Newfield*, the town ordinance required the zoning board to issue findings of fact. 634 A.2d 1315, 1317 (Me. 1993). Citing *Vachon*, we rejected the argument that the appeal period began to run only when the written decision was issued. *Id.* Instead, we held that the

8

appeal period "commences when the Board takes its public vote because that time is easily determined and precisely fixed and because all parties to the public proceeding will ordinarily know of the Board's public vote at the time it is taken." *Id.* (quotation marks omitted).[5] Thus, even when faced with the arguably more ambiguous language in the earlier version of section 2691, we have consistently held that the appeal period runs from the date of the vote, regardless of whether or when a written decision is issued.

[¶15] Although the Beckfords argue that it is useful for potential appellants to have a written decision and findings before they must decide whether to pursue an appeal, the plain language of section 2691 clearly states that the appeal period begins with the "vote," and therefore we rejected that argument when it was made by the dissent in *Woodward*. 634 A.2d at 1318 (Clifford, J., dissenting). Moreover, section 2691 requires that notice of a decision be mailed or delivered within seven days, which, coupled with the forty-five-day appeal period, provides

---

[5] The vitality of *Woodward* as it applies to cases governed by section 2691 is not called into question by our opinion in *Gorham v. Androscoggin County*, 2011 ME 63, 21 A.3d 115. The question presented there was whether Gorham's appeal from a decision to terminate his public employment was timely pursuant to M.R. Civ. P. 80B(b)'s default appeal period because no relevant statute provided a deadline for filing an appeal. *See id.* ¶ 10. Therefore, our holding in that case that the appeal period began when the agency issued written findings has no application to section 2691, because section 2691 was not at issue and, beyond that, because section 2691 specifically identifies the "vote" as the event that starts the appeal period, not "notice" as is the case in Rule 80B. The holding in *Gorham* applies only to the question of when the appeal period began pursuant to M.R. Civ. P. 80B(b) prior to its amendment. *See id.* ¶ 19; *see also supra* n.2. Accordingly, our "disavowal" in *Gorham* of *Woodward*'s dicta regarding notice pursuant to Rule 80B does not extend to the holding interpreting section 2691.

sufficient time for an informed decision whether to appeal. *See* 30-A M.R.S. § 2691(3)(E).

[¶16]  We therefore conclude that the appeal period established in section 2691 begins with the board of appeals' final public vote, even when the board of appeals is required to issue a written decision and does so at a later date.

B.

[¶17]  We next consider whether the ZBA vote that triggered the appeal period in this case was the one on January 25 or the one on January 30.

[¶18]  In *Carroll*, we held that "the date of the vote on the original decision" in section 2691 "necessarily means the vote finally approving or disapproving an appeal . . . ." 2003 ME 135, ¶ 23, 837 A.2d 148.  Similarly, in *Woodward*, we held that the "appeal period commences when the Board takes its public vote," 634 A.2d at 1317, and in *Vachon*, we held that the decision was "rendered" when the board of appeals "cast[s] its public vote" or "publicly makes its decision or announces it to the public." 499 A.2d at 141.  The January 25 vote meets all of those definitions: the ZBA took a public vote on each of the issues on appeal, it publicly made a decision finally disapproving the appeal, and it announced its decision at a public meeting.

[¶19]  The scope of the issues on which the ZBA voted at the January 25 meeting also underscores the finality of the decision made there.  The ZBA

considered and rejected, point by point, each of the challenges raised by the Beckfords in their appeal. Then, after rejecting the Beckfords' individual contentions, the members of the ZBA unanimously denied the appeal "in its entirety," thereby fully disposing of all the issues raised in the appeal. That vote was certainly not a vote on a discrete or preliminary matter that we have held to be insufficient to start the appeal period. *See Carroll*, 2003 ME 135, ¶¶ 19, 23, 837 A.2d 148 (holding that a vote to waive a zoning requirement before the application was finally approved was not the "vote on the original decision"). Rather, the ZBA fully disposed of all of the issues raised in the Beckfords' appeal and then, in a comprehensive and unified way, denied the appeal, leaving only the task of issuing written findings as the Ordinance required.

[¶20] Although the ZBA stated on January 25 that it would meet on January 30 "for the Final Decision," it did not say that it would meet for a final *vote*. The words "Final Decision" present a clear reference to the anticipated written decision. The decision had already been made on January 25 to comprehensively reject the Beckfords' appeal "in its entirety," and the only action that remained to be taken was the issuance of a written notice of the ZBA's decision, which was required by law. When the ZBA voted on January 30, therefore, its members were voting to approve the text of a document memorializing the decision that had already been made. This action taken by the ZBA on January 30, however, does

not take away from the statutory significance of the January 25 vote, which, as discussed above, was still the "vote on the original decision" pursuant to section 2691 because it was a public, final vote on the Beckfords' appeal.

[¶21]  It is to be fully expected that a vote within the meaning of section 2691 does not complete the board's work on a matter.  For the reasons discussed in section A *supra*, the vote that begins the appeal period pursuant to section 2691 need not be contemporaneously accompanied by the issuance of written findings. In fact, cases such as *Vachon*, *Woodward*, and *Carroll* demonstrate that a board of appeals may choose to delay issuance of written findings until sometime after it takes the "vote" that starts the appeal period for the purposes of section 2691. When a board of appeals defers issuance of a written decision to a date after it takes its vote on an appeal, as the ZBA did here, it is likely, if not inevitable, that it will then take another vote on the text of the written decision.  That later vote cannot be treated as an event that renders the prior vote less than final for the purposes of section 2691 because that would equate the vote that starts the appeal period with the issuance of a written decision, which is directly contrary to our holdings in *Vachon*, *Woodward*, and *Carroll.*  This is confirmed by *Woodward*, where we held that the board of appeals' vote was complete for purposes of section 2691 and triggered the appeal period, even though the board "contemplated further

action; it had not yet determined wording of the decision and still had to write it in a 'legal manner.'" 634 A.2d at 1318 (Clifford, J., dissenting).

[¶22] We therefore conclude that the forty-five-day appeal period commenced with the ZBA's public vote on January 25 and that, consequently, the Beckfords' Rule 80B appeal to the Superior Court was filed late. We note that, had the Beckfords so moved, the Superior Court would have had the authority to allow an extension of the deadline for "good cause shown." 30-A M.R.S. § 2691(3)(G). Even though Pisgah moved to dismiss the appeal as untimely, however, the Beckfords did not make such a motion.

[¶23] Because the appeal was not timely, the Beckfords failed to meet the jurisdictional requirements for judicial review of the Planning Board's decision. *See Vachon*, 499 A.2d at 142.

The entry is:

> Judgment vacated. Remanded to the Superior
> Court for entry of dismissal.

---

SAUFLEY, C.J., concurring.

[¶24] I join the Court's opinion, and I write separately to emphasize that variations and ambiguities in the application of legislatively established time frames for appeal in state and local administrative laws may create confusion for

both proponents and opponents of particular administrative actions, and contribute significantly to increased costs and delay in such appeals.

[¶25]   The date from which the time runs for an administrative appeal, whether it is from a state or local agency decision or other administrative action, varies widely in the law.  Because an appellate filing deadline is jurisdictional, any failure to meet the deadline requires that the appeal be dismissed, as has occurred here.  *See Fournier v. Dep't of Corrs.*, 2009 ME 112, ¶¶ 2, 7, 983 A.2d 403.  Thus, although it may be difficult to identify the date when the time for filing any appeal starts to run and the date when it expires, identification of the proper filing date is critically important.[6]

---

[6]  In municipal appeals, the process is complicated further by potential difficulties in identifying the decision-maker.  Identifying the local decision-maker is important to a court's understanding of the purpose of a hearing held in a municipal matter, the issues that were considered at that hearing, the deference that a reviewing court may accord to any resulting decision, and—relevant to the issue before us here—the time frame for taking an appeal.  I provide the following examples:

- In some instances, it may appear that a party is authorized to appeal directly to the Superior Court from a decision of a code enforcement officer or a planning board, but such a direct appeal is not proper if a party must first appeal to a municipal board of appeals.  *See Wister v. Town of Mt. Desert,* 2009 ME 66, ¶ 15, 974 A.2d 903; *Sanborn v. Town of Sebago,* 2007 ME 60, ¶¶ 6-11, 924 A.2d 1061; *Thomas v. City of S. Portland*, 2001 ME 50, ¶ 2, 768 A.2d 595.

- Occasionally, a municipal decision-maker is characterized as acting on appeal but conducts a de novo hearing and becomes the fact-finding entity whose decision is reviewed on appeal.  *See Peregrine Developers, LLC v. Town of Orono,* 2004 ME 95, ¶ 9, 854 A.2d 216; *Griffin v. Town of Dedham*, 2002 ME 105, ¶ 6, 799 A.2d 1239, *abrogated on other grounds by*, *Isis Dev., LLC v. Town of Wells*, 2003 ME 149, ¶ 3, 836 A.2d 1285.

- Sometimes, a board of appeals acts only in an appellate capacity and cannot decide de novo an issue brought to a planning board, *see Gensheimer v. Town of Phippsburg,* 2005 ME 22, ¶¶ 5-18, 868 A.2d 161, or a code enforcement officer, *see Mills v. Town of Eliot,* 2008 ME 134, ¶¶ 13-16, 955 A.2d 258.

14

[¶26]   Unfortunately, the laws are replete with traps for the unwary.   For appeals from state agency decisions, the generally applicable Administrative Procedure Act (APA) specifies that a party must appeal within 30 days "after receipt of notice" of an agency action, but that others who assert that they are aggrieved and want to appeal have 40 days to seek appellate review of final agency action "from the date the decision was rendered."   5 M.R.S. § 11002(3) (2014).[7] This language raises considerable ambiguity as to whether the "notice" to trigger running of the appeal clock may be a vote of an agency, a mailing of a written notice, or some later receipt of a written notice of either the vote or a written decision.   Moreover, the APA does not govern appellate time frames in all administrative appeals from state agency decisions.   In some areas, the Legislature has selectively varied the time frames and triggering events for appellate review.[8]

---

- Sometimes, a board of appeals must decide a matter de novo, unless the local ordinance specifies that it is to hear the matter as an appeal.  *See Stewart v. Town of Sedgwick*, 2000 ME 157, ¶¶ 6-7, 15, 757 A.2d 773.

[7]  For local agency decisions, M.R. Civ. P. 80B(b) requires that an appeal "be filed within 30 days after notice" of the agency action.

[8]  For example:

- Title 19-A M.R.S. § 2309(6) (2014) provides for the right to appellate review "within 30 days of the date of the decision" of the Department of Health and Human Services regarding whether or not a responsible parent must pay the health care coverage for his or her dependent children;

- Title 35-A M.R.S. § 1320 (2014) and M.R. App. P. 2(b)(3) provide for the right to appellate review within 21 days "from a final decision of the [Public Utilities] [C]ommission"; and

Further confusion arises because some decisions must be made in writing, and the law is silent on the operative decision in other instances.

[¶27] Similarly, with respect to appeals from local decisions, time frames may vary depending on the nature of the local government action and whether the appeal is taken from a planning board decision, board of appeals decision, action of a local legislative body, or other municipal or county action.  For example:

- Appeals from decisions of local boards of appeals must be filed "within 45 days of the date of the vote on the original decision," 30-A M.R.S. § 2691(3)(G) (2014);

- Appeals challenging the validity of an amendment to a zoning ordinance or map for failure to comply with the proper notice requirements must be filed "within 30 days after the adoption of the amended ordinance or map," 30-A M.R.S. § 4352 (2014); and

- Appeals challenging the damages awarded after a local district's exercise of its eminent domain power must be initiated "by filing a complaint in [Superior] [C]ourt and serving the district with a copy of the complaint within 60 days from the date of the recording in the registry of deeds," 30-A M.R.S. § 3510(2) (2014).

[¶28] Although we have made efforts to clarify the process and time limits as they apply to certain appeals, *see Gorham v. Androscoggin Cnty.*, 2011 ME 63,

---

- Title 36 M.R.S. § 151(2)(F)(1) (2014) provides for the right to appellate review "within 60 days after receipt of the reconsidered decision" for a person petitioning the State Tax Assessor for reconsideration of a determination or assessment.

¶¶ 8-20, 21 A.3d 115; *see also* M.R. Civ. P. 80B, 80C, confusion remains.[9]  The appeal before us today is an example of the difficulties caused by the imprecise or varying language that triggers appellate time frames.  When even those jurists who regularly apply and interpret the time frames set by the Legislature or by local ordinances cannot agree on their meaning or applicability, it is undoubtedly also difficult for the public and the Bar to do so.

[¶29]  It would greatly benefit the people of the State of Maine if the Legislature undertook a thorough review of the events that trigger the running of the time for appellate review for both state and municipal appeals to establish a single, consistent, and understandable triggering event and time frame for seeking appellate review.

---

[9]  Adding to the confusion is the different time frame established for appealing from an agency's failure or refusal to act on a specific application.  A party must appeal from a local government entity's failure or refusal of an agency to act—to the extent that failure to act can be differentiated from a delayed response—"within six months after expiration of the time in which action should reasonably have occurred."  M.R. Civ. P. 80B(b).  The time for appealing a failure or refusal to act by a state agency, set by 5 M.R.S. § 11002(3) (2014), is the same—six months after expiration of the time within which the agency action "should reasonably have occurred."  When an action "should reasonably have occurred" can be the subject of spirited debate.

SILVER, J., with whom JABAR, J., joins, dissenting.

[¶30]  I respectfully dissent.  The Beckfords' appeal was timely and the Court should reach the merits.  As the Court recognizes, there are two relevant votes—one on January 25 and one on January 30.  Although the ZBA voted to deny the Beckfords' appeal on January 25, the minutes of that meeting explain that the ZBA also "decided that [it] would meet January 30, 2012 @ 7:00 pm for the *Final* Decision" on the issue.  (Emphasis added.)  "The 'date of the vote on the original decision' necessarily means the vote *finally* approving or disapproving an appeal or an application, not any of the many preliminary votes that may be taken in the course of consideration of an appeal or an application."  *Carroll v. Town of Rockport*, 2003 ME 135, ¶ 23, 837 A.2d 148 (emphasis added).  The finality of the vote is what matters here.

[¶31]  The minutes make clear that the January 25 meeting was not the final vote.  As the Superior Court reasoned, "there would have been no need to schedule the matter on January 30, 2012 for the 'Final Decision' if the final decision had already been made."  The final public vote did not occur until January 30, when the ZBA voted to "accept the presented copy, as written, of the Notice of Final Decision made by the Appeals Board on the appeal from Julie and Peter Beckford."  I would therefore find that the appeal was timely.

18

---

ALEXANDER, J., dissenting

[¶32]  I respectfully dissent.

[¶33]  The Freedom of Access Act specifies that, when any agency conditionally approves or denies any permit, the agency "shall set forth in the record the reason or reasons for its decision and make finding[s] of the fact, in writing, sufficient to appraise the applicant and any interested member of the public of the basis for the decision."  1 M.R.S. § 407(1) (2014).  The same requirement applies, as a matter of due process, when any application for a permit is approved after a hearing process when issuance of the permit was opposed by a party with an interest in the proceedings.  *Carroll v. Town of Rockport*, 2003 ME 135, ¶¶ 26-31, 837 A.2d 148.

[¶34]  When a written decision or findings are required by law, the findings must be sufficiently specific to permit understanding and meaningful appellate review.  *Schwartz v. Unemployment Ins. Comm'n*, 2006 ME 41, ¶ 10, 895 A.2d 965.  When findings of fact are required by law or ordinance, and an administrative agency "fails to make sufficient and clear findings of fact and such findings are necessary to judicial review, [the Court] will remand the matter to the agency or board to make the findings."  *Carroll,* 2003 ME 135, ¶ 30, 837 A.2d 148; *see also*

*Christian Fellowship & Renewal Ctr. v. Town of Limington*, 2001 ME 16, ¶¶ 11-19, 769 A.2d 834. The result of a vote, even if supported by statements of individual members of the administrative decision-maker, does not constitute a final, appealable decision, unless the reported statements are adopted by the entire decision-making body. *Carroll*, 2003 ME 135, ¶ 28, 837 A.2d 148.

[¶35] In *Gorham v. Androscoggin County*, 2011 ME 63, ¶¶ 8-20, 21 A.3d 115, we clarified the holding of *Carroll* to indicate that when a statute or local ordinance requires that a municipal administrative decision be in writing, the time for taking an 80B appeal will run from the time of approval of the written decision, not from any earlier vote that preceded preparation of the written decision. Notably, both the Freedom of Access Act, 1 M.R.S. § 407(1), and the Town's land use ordinance required the written decision here.

[¶36] In *Gorham*, we articulated the reasons for holding that the time for taking an appeal run from preparation of a statutorily required written decision, and not from any earlier vote, as follows:

> An aggrieved party . . . cannot state a grievance without first understanding the basis for an agency's decision. Indeed, a party might not recognize whether a grievance exists until an agency articulates its findings and rationale in a final written decision. Conversely, an agency's findings and rationale might persuade the aggrieved party to accept the agency's decision and forego judicial review.

20

> Other policy considerations and practical reasons expressed elsewhere in the Rules support construing "notice of any action" as referring to a final written agency decision that is supported by findings of fact and conclusions of law where a written decision with findings and/or conclusions is required by rule or statute. A decision to take an appeal should be informed. *See* M.R. Civ. P. 11(a) (requiring that "there is good ground to support [every pleading or motion]"). Furthermore, requiring parties with nascent grievances to file Rule 80B complaints pro forma to prevent losing their right of appeal is not an efficient use of judicial resources. *See* M.R. Civ. P. 1 ("[These rules] shall be construed to secure the just, speedy and inexpensive determination of every action."). To construe "notice of any action" as referring to a decision unsupported by findings and conclusions in circumstances where the law requires the issuance of a written decision "would require a party to appeal a decision of an administrative board before the basis of that decision is set forth, and, therefore, before it becomes clear whether an appeal is warranted."

*Id.* ¶¶ 15-16 (quoting *Woodward v. Town of Newfield,* 634 A.2d 1315, 1318 (Me.1993) (Clifford, J., dissenting)).

[¶37] The majority opinion in *Woodward v. Town of Newfield,* cited to support the Court's opinion here, is explicitly disavowed at n.3 of *Gorham.* Following up on *Gorham,* this year we amended Rule 80B(b) to specify that the time for filing an appeal begins to run on the date of the public vote or announcement of the final decision sought to be appealed. However, if a statute, ordinance, or rule requires that the decision be in writing, then the time for the filing of an appeal begins "*when the written decision has been adopted.*" (Emphasis added.)

[¶38]   Considering that the Freedom of Access Act, 1 M.R.S. § 407(1), requires that most local decisions resulting from administrative adjudications be in writing, the time for filing most appeals from local administrative decisions begins to run from adoption of the written decision—or publication of the decision if it is not formally adopted.  Here, there was a vote adopting the written decision that, pursuant to the Town ordinance, was the final decision, triggering the running of the time for appeal.  This appeal to the Superior Court was timely after publication of the written decision required by law.  I would reach the merits of this appeal.

**On the briefs:**

William B. Devoe, Esq., and Jonathan A. Pottle, Esq., Eaton Peabody, Bangor, for appellant and cross-appellee Pisgah Mountain, LLC

Peter Beckford and Julie Beckford, appellees and cross-appellants pro se

Business and Consumer Docket docket number AP-2012-10
FOR CLERK REFERENCE ONLY