MAINE SUPREME JUDICIAL COURT            Reporter of Decisions
Decision:     2016 ME 105
Docket:       Ken-15-572
Argued:      June 9, 2016
Decided:     July 12, 2016

Panel:        SAUFLEY, C.J., and ALEXANDER, <u>MEAD</u>, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

## SARAH E. CHENEY

v.

## UNEMPLOYMENT INSURANCE COMMISSION

MEAD, J.

[¶1] Sarah E. Cheney appeals from a judgment of the Superior Court (Kennebec County, *Marden, J.*) affirming a decision of the Unemployment Insurance Commission that upheld a hearing officer's decision denying her claim for unemployment benefits on the ground that she was not available to work full-time within the meaning of 26 M.R.S. § 1192(3) (2015) and Commission rules. Cheney contends that the Commission erred in its construction of the statute, and that its decision is contrary to public policy. We affirm the judgment.

## I. BACKGROUND

[¶2] The following facts, drawn from the administrative record, are not disputed. Sarah Cheney began working for Global Montello Group Corporation at the Augusta "Mobil on the Run" gas station and convenience store in

2

November 2008, eventually becoming assistant manager. She normally worked forty hours per week on shifts encompassing weekends and some weekdays. Cheney was on maternity leave from mid-August 2013 until November 6, 2013. When she returned, disputes with her employer arose over a change to her schedule that made her childcare situation more difficult, and over an appropriate place for her to pump breast milk at work. Two days later, due primarily to the latter issue, she gave her two-week notice.

[¶3]  Cheney's claim for unemployment benefits was denied by the Bureau of Unemployment Compensation in two Deputy's Decisions, both issued January 22, 2014. The first, Deputy's Decision No. 6, ruled that Cheney voluntarily left her employment without good cause.[1] The second, Deputy's Decision No. 8, ruled that Cheney was not "able to work and available for work" within the meaning of 26 M.R.S. § 1192(3).[2]

[¶4]  Cheney appealed both decisions to the Department of Labor's Division of Administrative Hearings. *See* 26 M.R.S. § 1194(3) (2015). After holding telephonic hearings on the appeals, during which Cheney testified, the Hearing

---

[1]  Title 26 M.R.S. § 1193(1)(A) (2015) provides, in part, that, "An individual shall be disqualified for benefits . . . [f]or the week in which the claimant left regular employment voluntarily without good cause attributable to that employment."

[2]  The statute provides, in part, that "[a]n unemployed individual shall be eligible to receive benefits with respect to any week only if . . . [t]he individual is able to work and is available for full-time work at the individual's usual or customary trade, occupation, profession or business . . . ." 26 M.R.S. § 1192(3) (2015).

Officer affirmed both Deputy's Decisions. Cheney appealed the Hearing Officer's decisions to the Unemployment Insurance Commission pursuant to 26 M.R.S. § 1194(3), (5) (2015). In the first of two September 30, 2014, decisions, the Commission set aside Deputy's Decision No. 6 upon finding that the lack of a suitable place to pump breast milk constituted good cause for Cheney to leave her employment. That decision is not before us on appeal. The second decision affirmed Deputy's Decision No. 8, finding that Cheney "was not able and available for full-time work within the meaning of 26 M.R.S. § 1192(3) and Chapter 9(2)(A) of the Rules."

[¶5] Pursuant to M.R. Civ. P. 80C, Cheney petitioned the Superior Court to review the Commission's "able and available" decision. The court affirmed, and Cheney appealed.

## II.  DISCUSSION

### A.    The Commission's Decision

[¶6]    We directly review the Commission's decision. *Ramelli v. Unemployment Ins. Comm'n*, 2016 ME 6, ¶ 2, 130 A.3d 963. "Our review is limited to determining whether the Commission correctly applied the law and whether its factual findings are supported by any competent evidence." *Id.* (alterations and quotation marks omitted). In conducting our review,

> [w]e will not overrule findings of fact supported by substantial evidence, defined as such relevant evidence as a reasonable mind might accept as adequate to support the resultant conclusion. With respect to the law, we review de novo issues of statutory interpretation. However, we defer to an agency in those areas within its expertise unless a statute or regulation compels a contrary result.

*Sinclair Builders, Inc. v. Unemployment Ins. Comm'n*, 2013 ME 76, ¶¶ 9-10, 73 A.3d 1061 (citations and quotation marks omitted). The burden of demonstrating that a contrary result is compelled rests with Cheney as the party seeking to overturn the Commission's decision. *Bischoff v. Bd. of Trustees*, 661 A.2d 167, 170 (Me. 1995); *see Schwartz v. Unemployment Ins. Comm'n*, 2006 ME 41, ¶ 8, 895 A.2d 965.

[¶7] The Commission based its decision on statutory provisions and rules derived from those provisions. Pursuant to statute:

> An unemployed individual shall be eligible to receive benefits with respect to any week only if:
>
> . . . .
>
> The individual is able to work and is available for full-time work at the individual's usual or customary trade, occupation, profession or business or in such other trade, occupation, profession or business for which the individual's prior training or experience shows the individual to be fitted or qualified; and . . . is actively seeking work in accordance with the regulations of the commission; provided that no ineligibility may be found solely because the claimant is unable to accept employment on a shift, the greater part of which falls between the hours of midnight to 5 a.m., and is unavailable for that employment because of parental obligation . . . and provided that an unemployed individual who is neither able nor available for work due

to good cause as determined by the deputy is eligible to receive prorated benefits for that portion of the week during which the individual was able and available.

26 M.R.S. § 1192(3). "Good cause" as used in section 1192(3) "includ[es] child care emergencies." 26 M.R.S. § 1192(13) (2015).

[¶8] The Commission's rules provide that

[i]n order to be considered to be "available for work," a claimant must be "attached to the labor market." This means that he must be ready and willing to accept work for which he is qualified under the conditions which would normally be associated with the labor market. He must be available to work in locations in which, and during the hours in which, he could reasonably be expected to be employed.

. . . .

In order to meet the availability for work requirements of the Employment Security Law, a claimant must be available to accept work during the hours which are customary for the trade or occupation in which he usually works or for the trade or occupation in which he has prior training or experience. Claimants whose occupations normally involve working on more than one shift must be available to work on all such shifts.

5 C.M.R. 12 172 009-2 § 2(A) (2004).

[¶9] Here, although the Commission noted Cheney's availability and willingness to work many hours during the week, the facts found by the Commission in denying Cheney's claim are supported by substantial record evidence, and the statutes and rules cited *supra* do not compel a result contrary to its decision. *See Sinclair Builders, Inc.*, 2013 ME 76, ¶¶ 9-10, 73 A.3d 1061.

6

Cheney testified before the Hearing Officer that her normal occupation was retail work; that over the course of a given year during her ten-year career in that occupation she worked all days of the week on varied shifts, including day shifts starting at 5:30 a.m. and overnight shifts lasting until 6:00 a.m.; and that since January 6, 2014, she was unable to work her normal retail schedule because of her husband's job change and its impact on her childcare situation, and as a result she was restricted to working weekdays from 6:30 p.m. until 6:00 a.m., and at any time on the weekend.

[¶10]  The Commission found that by her own testimony, Cheney was not "available for full-time work at [her] usual or customary . . . occupation," 26 M.R.S. § 1192(3), because she was not available to work daytime shifts during the week—shifts that she had worked in the past.  That restriction on her availability also runs afoul of Rule 2(A), which requires that "[c]laimants whose occupations normally involve working on more than one shift must be available to work on all such shifts."  5 C.M.R. 12 172 009-2 § 2(A) (2004).

[¶11]  Concerning the statutory alternative condition for eligibility, namely that Cheney be "available for full-time work . . . in such other trade, occupation, profession or business for which [her] prior training or experience shows [her] to be fitted or qualified," 26 M.R.S. § 1192(3), the Commission found that the record did not demonstrate that she could work in a retail position that did not require any

weekday daytime hours, hours that it found "generally encompass[] standard hours for any retail establishment or occupation." We defer to the Commission's finding concerning the standard hours required for retail work as an "area[] within its expertise." *Sinclair Builders, Inc.*, 2013 ME 76, ¶ 10, 73 A.3d 1061 (quotation marks omitted).

[¶12] Further supporting the Commission's decision, the Legislature has explicitly preserved eligibility for benefits for workers who cannot, due to "parental obligation," which would include childcare obligations, work shifts for which the majority of the hours are midnight to 5:00 a.m. 26 M.R.S. § 1192(3). As the Commission concluded, the implication of that exception is that eligibility for benefits is not similarly protected for workers who cannot work other shifts because of childcare obligations—in this case, daytime shifts during the week. If eligibility were protected for those shifts as well, then logically the statute would contain a childcare exception that was not time-restricted. *See Musk v. Nelson*, 647 A.2d 1198, 1201-02 (Me. 1994) ("[A] well-settled rule of statutory interpretation states that express mention of one concept implies the exclusion of others not listed. The statute [at issue] provides a single exception and implicitly denies the availability of any other." (citation omitted)).

[¶13] Finally, the "good cause" provision of section 1192(3), providing that "an unemployed individual who is neither able nor available for work due to good

cause as determined by the deputy is eligible to receive prorated benefits," is not triggered on these facts. The statute defines "good cause" as including "child care emergencies," implicitly excluding the kind of ongoing childcare situation that Cheney testified to. 26 M.R.S. § 1192(13); *see Musk*, 647 A.2d at 1201-02. If "good cause" encompassed Cheney's situation, then the word "emergencies" is superfluous, and when construing statutes we do not ignore language chosen by the Legislature. *See Blue Yonder, LLC v. State Tax Assessor*, 2011 ME 49, ¶ 10, 17 A.3d 667 ("Words in a statute must be given meaning and not treated as meaningless and superfluous." (quotation marks omitted)).

[¶14] In sum, although the Commission recognized that its result was "unfortunate[]" given Cheney's "commendable" willingness to work many hours during the week, a different result is not compelled by either statute or rule. *See Sinclair Builders, Inc.*, 2013 ME 76, ¶ 10, 73 A.3d 106.

B. Public Policy

[¶15] Cheney argues that the Commission's result is contrary to public policy because she is denied the protection of the Employment Security Law, *see* 26 M.R.S. § 1041 (2015), despite being willing and available to work full time. That is an argument for the Legislature. *See State v. Brown*, 2014 ME 79, ¶ 1 n.1, 95 A.3d 82 (stating, in discussing other state policies, that "[t]hese policy arguments are more appropriately addressed to the Maine Legislature").

[¶16]   In 1957, the Legislature stated the public policy underlying the unemployment compensation system.   P.L. 1957, ch. 381, § 1 (effective Aug. 28, 1957) (codified at 26 M.R.S. § 1042 (2015)).   The Legislature has since refined its declaration of public policy by enacting provisions protecting the eligibility of workers facing childcare hardship in two circumstances: (1) when required to work shifts for which the majority of the assigned hours are midnight to 5:00 a.m., and (2) when facing a "child care emergenc[y]."   26 M.R.S. § 1192(3), (13).   It has given no similar indication that denying unemployment benefits to a worker in Cheney's situation violates public policy.   Although we have held that "Maine's Employment Security Law is remedial legislation mandating a liberal construction in favor of the claimant," we have also recognized that "a court may not enlarge the scope of the Employment Security Law." *Ramelli*, 2016 ME 6, ¶ 10, 130 A.3d 963 (citation and quotation marks omitted).

The entry is:

Judgment affirmed.

**On the briefs:**

Adrianne E. Fouts, Esq., Drummond Woodsum, Portland, for appellant Sarah E. Cheney

Janet T. Mills, Attorney General, and Nancy Macirowski, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Unemployment Insurance Commission

**At oral argument:**

Adrianne E. Fouts, Esq., for appellant Sarah E. Cheney

Nancy Macirowski, Asst. Atty. Gen., for appellee Unemployment Insurance Commission

Kennebec County Superior Court docket number AP-2014-71
FOR CLERK REFERENCE ONLY