STATE OF MAINE
OXFORD, ss.

SUPERIOR COURT
CIVIL ACTION
NO. AP-17-0001 consolidated with
AP-17-0002

DWAYNE R. BENNETT and
LAURIE E. CASTLE,

        Petitioners,

v.

LAND USE PLANNING
COMMISSION
        Respondent,

Consolidated with,

VIOLETTA WIERZBICKI

        Petitioner,

v.

LAND USE PLANNING
COMMISSION
        Respondent,

And,

EVERPOWER MAINE, LLC and
DEANA AND WAYNE BUCK,

        Parties-in-Interest.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ORDER ON 80C APPEAL

Before the court are Petitioners Dwayne R. Bennett's and Laurie E. Castle's ("Petitioner 1's"), and Petitioner Violetta Wierzbicki's ("Petitioner 2's") consolidated appeal for review of Respondent Land Use Planning Commission's (LUPC's) decision not to remove Milton Township from the wind energy expedited permitting area. M.R. Civ. P. 80C; 5 M.R.S. §§ 8057(1)-(2), 8058(1). For the reasons below, the court denies Petitioners' appeal.

I. Background and Procedural History

On January 8, 2016, the LUPC received a petition to remove Milton Township from the expedited permitting area for wind energy development. (R. Vol VI, tab 176, p. 1.) On February 29, 2016, Party-in-Interest Wayne Buck, a resident and property owner in Milton Township, requested a substantive review. *Id.*; (R. Vol. I, tab 5, p. 2.); (Parties-in-Interest Ans. 5); 35-A M.R.S. § 3453-A(3). On August 10, 2016, the LUPC held a public hearing. 35-A M.R.S. § 3453-A(1); (R. Vol VI, tab 176, p. 1.) The LUPC received written submissions, testimony, and comments before, during, and after the hearing "from the Substantive Review Petitioner, a potential wind developer, the Petition Circulator, over 80 interested persons, and 8 governmental agencies." (R. Vol VI, tab 176, p. 1); (Resp't's Br. 5.) On December 17, 2016, the LUPC issued a final decision denying the petition, saying that neither statutory criterion for removal was met.[1] (Resp't's Br. 17); (R. Vol. VI, Tab 176, ¶ 82 p. 19, ¶ 83 p. 20); 35-A M.R.S. § 3453-A(3).

On January 25, 2017, Petitioners 1 and 2 filed notices of appeal of LUPC's decision. The appeals were consolidated on March 9, 2017.

II. Standard of Review

When acting in an appellate capacity pursuant to Rule 80C and the Administrative Procedures Act, 5 M.R.S.A. §§ 11001-11008, the court reviews an agency's decision for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record. *Somerset Cnty. v. Dep't of Corr.*, 2016 ME 33, ¶ 14, 133 A.3d 1006. The party seeking to vacate an agency's decision bears the burden of

---

[1] After substantive review, the LUPC shall remove a place from the expedited permitting area as identified pursuant to 35-A M.R.S. § 3451(3)(B), if it finds the proposed removal: (A) will not have an unreasonable adverse effect on the State's ability to meet the state goals for wind energy development ("Criterion A": the wind energy goals); and (B) is consistent with the principal values and the goals in the comprehensive land use plan adopted by MUPC, 35-A M.R.S. § 3453-A(3)(A)-(B) ("Criterion B": the comprehensive land use plan (CLUP) principal values.)

persuasion to demonstrate error. *Rossignol v. Me. Pub. Emples. Ret. Sys.*, 2016 ME 115, ¶ 6, 144 A.3d 1175.

Questions of law are subject to de novo review. *York Hosp. v. HHS*, 2008 ME 165, ¶ 32, 959 A.2d 67. Deference is given to an agency's interpretation of an ambiguous regulation or statute that is within its area of expertise unless the interpretation is unreasonable or if the statute or regulation plainly compels a contrary result. *Cheney v. Unemployment Ins. Comm'n*, 2016 ME 105, ¶ 6, 144 A.3d 45; *Lippitt v. Bd. of Certification for Geologists & Soil Scientists*, 2014 ME 42, ¶ 17, 88 A.3d 154.

The Court will not substitute its judgment for that of the agency where there is sufficient relevant evidence that a reasonable mind might accept as adequate to support the resultant conclusion, and the fact-finder could have fairly and reasonably found the facts as they did, even if the record contains inconsistent evidence or evidence contrary to the result reached by the agency. *Cheney*, 2016 ME 105, ¶ 6, 144 A.3d 45; *Guar. Trust Life Ins. Co. v. Superintendent of Ins.*, 2013 ME 102, ¶ 18, 82 A.3d 121; *Watts v. Bd. of Envtl. Prot.*, 2014 ME 91, ¶ 5, 97 A.3d 115. An agency has the authority to determine the weight to be given to the evidence, and to make its own credibility determinations. *Rossignol*, 2016 ME 115, ¶ 6, 144 A.3d 1175; 5 M.R.S.A. § 11007(3); *Passadumkeag Mt. Friends v. Bd. of Envtl. Prot.*, 2014 ME 116, 102 A.3d 1181. "It is not sufficient to demonstrate that, on the facts of the case, the decision maker could have made choices more acceptable to the appellant or even to a reviewing court." *Stein v. Me. Crim. Justice Acad.*, 2014 ME 82, ¶ 23, 95 A.3d 612 (citing *Sager v. Town of Bowdoinham*, 2004 ME 40, ¶ 11, 845 A.2d 567). The reviewing court will vacate a determination that a party failed to meet its burden of proof only if the record compels a contrary conclusion to the exclusion of any other inference. *Rossignol*, 2016 ME 115, ¶ 6, 144 A.3d 1175.

Procedural due process claims are analyzed by applying a two-step inquiry: (1) whether the government action has deprived the claimant of a protected property interest; and (2) if such a deprivation occurred, what process is due pursuant to the Fourteenth Amendment. *Merrill v. Me. Pub. Emples. Ret. Sys.*, 2014 ME 100, ¶ 21, 98 A.3d 211.

Evidence shall be admitted if it is the kind of evidence upon which reasonable persons are accustomed to rely in the conduct of serious affairs. Agencies may exclude irrelevant or unduly repetitious evidence. 5 M.R.S. §9057(2).

III. Discussion

*a. Criterion A: the wind energy goals*

Petitioners argue that there was sufficient relevant evidence to meet Criterion A that removal would not have an adverse effect on the State's ability to meet its wind energy goals, where the LUPC had evidence that energy from pending wind projects, not including Milton, exceeded the State's 2030 on shore wind energy goal of 3,000 megawatts. (Pet'r 1's Br. 2); 35-A M.R.S. § 3404(2)(C). The Petitioners argue LUPC was in error to find that removal would have an *unreasonably* adverse effect, where Milton was only projected to produce 40 megawatts. (Pet'r 2's Br. 8.)

The LUPC refers to testimony and evidence in the record that proposed projects do not always advance to development. (Resp't's Br. 11.) The LUPC heard public hearing testimony from a power systems engineer with SCG Engineering that only 7.7% of proposed MW proceeded to next stage of filing an interconnection application since 1996. (R. Vol. VI, tab 176, p. 15, ¶ 62.)

Furthermore, Petitioners argue that the LUPC made a "false presumption" that the removal of Milton from the expedited permitting area would foreordain that no wind energy projects would happen in Milton, because wind companies could still

pursue such projects as part of the rezoning process. (Pet'r 1's Br. 2-3); (Pet'r 2's Br. 5-6.) The Petitioners argue that LUPC's reliance on Party-in-Interest EverPower Maine, LLC's ("EverPower's") "threat" not to pursue a wind project in Milton, if Milton were removed from the expedited permitting area, was a presumption error based on irrelevant information that invalidates LUPC's finding that the wind energy goal criterion was not satisfied. (Pet'r 1's Br. 3); (Pet'r 2's Br. 5-6.)

EverPower, a potential wind energy developer in Milton, informed LUPC it could not "justify spending the significant capital necessary" to develop a wind project in Milton, if Milton were removed from the expedited permitting area, where rezoning is expensive, lengthy, and subject to an uncertain outcome even under the best of circumstances. (R. Vol. V, tab 168, p. 17, n. 12.) EverPower stated that the removal would create an additional obstacle not present in "more typical rezoning," where LUPC would be concluding that wind power was not an appropriate land use in Milton. *Id*; (Resp't's Br. 9.)

Petitioners argue the LUPC should not have considered the "appropriateness" of Milton for wind energy development, where it is not part of the removal by petition with review analysis, and where the removal statute requires that removal "may not prejudice any subsequent petition presented to [LUPC] to add the specified place back into the expedited permitting area." 35-A M.R.S. § 3453-A(1); (Pet'r 2's Br. 8-9.) The LUPC argues that "suitability" is an integral part of the wind energy goals criterion, in order to evaluate the extent of adverse effects of removal on the wind energy goals. (Resp't's Br. 12-13.)

The finding required to satisfy the wind energy goals criterion is not simply that there is an adverse effect on the state's ability to achieve its wind energy goals, but as conceded by Petitioners, that the effect is *unreasonable*. 35-A M.R.S. § 3453-A(3)(A)

(emphasis added); (Pet'r 2's Br. 8.) The LUPC found that a comparison of "whether Milton is well 'suited' for wind energy development" against the potential impacts to public resources was necessary to perform its reasonableness analysis. (R. Vol. VI, tab 176, p. 17, ¶ 70.) In specific, LUPC used the relative suitability of Milton as compared to other places within the expedited permitting area in order to determine the reasonableness of the adverse effects Milton's removal on the State's ability to achieve its wind energy goals. (R. Vol. VI, tab 176, p. 20, ¶ 83.) The statute does not plainly indicate that LUPC's consideration of suitability in this manner was prohibited, and the court defers to LUPC's interpretation of the statutes as to how to assess the unreasonableness of adverse effects.

b. *Criterion B: the CLUP principal values and goals*

Petitioners argue that there was sufficient relevant evidence to meet Criterion B that removal was consistent with the CLUP principal values and goals, where wind energy development would adversely impact a highly valued, unique recreation area. (Pet'r 1's Br. 3.) Petitioner argues that LUPC should have considered the effects on three of Milton's three ponds, which according to Petitioners meet the statutory definition of great ponds, as evidence of the direct impacts to scenic character. (Pet'r 1's Br. 3.) Petitioners argue that removal is necessary to protect the bat hibernaculum in Milton. the LUPC should have considered bats. (Pet'r 1's Br. 4.) Petitioners argue LUPC relied on written testimony that incorrectly stated that there are no places of national historic significance in Milton. (Pet'r 1's Br. 4-5.)

The LUPC argues that all four of the CLUP principal values were considered, (recreational opportunities, high-value natural resources and features, natural character, and economic value), and concedes that there was evidence sufficient to conclude that removal was consistent with three. (R. Vol. VI, tab 176, p. 18, ¶ 74);

http://www.maine.gov/dacf/lupc/plans_maps_data/clup/Chapter1.pdf); (Resp't's Br. 14.) However, LUPC found removal was not consistent with "economic value" (R. Vol. VI, tab 176, p. 18, ¶ 74.) The LUPC then undertook "weighing and balancing" of the four values together to determine whether removal was consistent with the CLUP values as mandated by 35-A M.R.S. § 3453-A(3)(B), and determined it was not. (Resp't's Br. 16); (R. Vol. VI, tab 176, p. 19, ¶ 82.) Petitioners do not dispute that removal was not consistent with the CLUP economic value goal. Instead, they argue the weighing and balancing was improper. (Pet'r 2's Br. 14.) The LUPC argues that balancing must happen where the values are interconnected and sometimes in tension. (Resp't's Br. 16.) The statute does not plainly indicate that the value balancing strategy employed by LUPC was prohibited. Furthermore, if LUPC had merely compared the number of consistent values (three) to the number of inconsistent values (one), this still would have been an implicit balancing exercise where each of the four values was equally weighted. The court defers to LUPC's interpretation of the statutes as to how to determine the consistency of removal with the CLUP values, where there are conflicting answers considering each value in isolation.

c. *Alleged false testimony*

Petitioners allege EverPower entered false testimony into the record when claiming not to have a completed site plan, and withheld relevant information in not providing the plan when requested. (Pet'r 1's Br. 5.) EverPower argues there is no evidence to support this allegation where Petitioners cite to a Federal Aviation Authority (FAA) rule that is not part of the record. (Parties-in-Interest Ans. 17.) This court's review is confined to the record. M.R. Civ. P. 80C(d). Additionally, Petitioner 1's conclusion appears to be based on the unpersuasive logic that if EverPower applied for

an FAA permit, and the FAA application requires "all Wind Turbine configurations," then EverPower must have completed a site plan. (Pet'r 1's Reply ¶ 5.)

*d. Benefits to Maine people*

Petitioners argue that LUPC did not act in accordance with the law where proposed wind energy program in Milton would not "benefit Maine people" as required by statute, because the energy will be transmitted out of state. (Pet'r 1's Br. 5.) There are no statutory requirements for the energy generated by a Maine wind energy facility to remain in the state.

*e. Alleged insufficiency of time to speak*

Petitioners argue that the people did not have sufficient opportunity to speak at the public hearing. (Pet'r 1's Br. 6.) However, the LUPC held pre-trial meetings, accepted written comments from interested parties, and the public hearing included daytime and evening sessions. (R. Vol. II, p. 3-5); (Resp't's Br. 5.)

## IV. Conclusion

Based on the foregoing, the Petitioners' 80C appeal is DENIED.

The Clerk is directed to enter this Order on the civil docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Date: August 8, 2017

Lance E. Walker
Justice, Superior Court